**In re Nicole L. WILHELM, Debtor.**

**No. 99–557–3F7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 30, 2003.

---

**52.** Memorandum in Support of Plaintiffs' Objection to Defendant's Motion for Summary

Judgment, doc. # 38, at 14.

Gregory A. Lawrence, Jacksonville, FL, for trustee.

Richard R. Thames, Jacksonville, FL, for Steve Watrel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This case came before the Court upon the Chapter 7 Trustee's Objection to Claim 10 filed by Steve Watrel, P.A. ("Watrel") and Watrel's response thereto. The Court conducted a hearing on January 22, 2002. The Court elected to take the matter under advisement and instructed the parties to file briefs in lieu of oral argument. Upon the evidence and the briefs of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

On January 8, 1997 Debtor was involved in an automobile accident. Debtor retained Watrel to represent her in an action for personal injuries sustained as a result of the accident. In connection therewith, Debtor and Watrel entered into a written contingency fee agreement (the "fee agreement") on January 16, 1997. The fee agreement provided that Watrel would receive 33⅓ % of any recovery obtained prior to litigation and 40% of any recovery obtained once litigation was initiated. (Watrel's Ex. 3.) The fee agreement also provided that Debtor would reimburse Watrel for any costs advanced on her behalf. (Watrel's Ex. 3.) In September, 1998 Debtor was involved in another automobile accident. Debtor also retained Watrel to represent her in an action for personal injuries sustained as a result of that accident.[1]

On January 27, 1999 Debtor filed a Chapter 7 bankruptcy petition. Gregory K. Crews (the "Trustee") was appointed as trustee. (Doc. 1.) Debtor did not inform Watrel of the bankruptcy filing. On February 25, 1999 the Trustee sent a letter to Watrel advising him that the personal injury actions were property of the bankruptcy estate and asking Watrel whether he desired to continue representation on the estate's behalf. (Trustee's Ex. 2.)

On March 11, 1999, prior to any response by Watrel to the Trustee, Debtor converted her case to Chapter 13. (Doc. 11.) Mamie L. Davis was appointed as the new trustee. On May 7, 1999 Ms. Davis sent a letter to Watrel advising him that although the proceeds of any recovery were assets of the bankruptcy estate, he could deduct his attorney's fee from any recovery. (Watrel's Ex. 6.) By letter dated April 24, 2000, Watrel informed Ms. Davis that "my law firm cannot afford to pursue these cases financially if you intend to claim the full settlement amounts as property of the bankruptcy estate. In other words, we need an agreement that our law firm will be paid its attorney's fees and costs at the time of settlement before the

---

1. Neither Watrel nor the Trustee submitted a fee agreement evidencing Watrel's representation of Debtor in an action for personal injuries sustained as a result of the second accident. However, both the Trustee's Objection to Claim 10 and Watrel's Response indicate that Debtor retained Watrel to represent her in both personal injury actions.

settlement proceeds are paid into Ms. Wilhelm's estate". (Watrel's Ex. 8.)

Because of her failure to make confirmed plan payments, Debtor's Chapter 13 case was reconverted to Chapter 7 on September 13, 2001. Crews was again appointed as the Chapter 7 trustee. On October 26, 2001 he sent a letter to Watrel advising him that the case had been reconverted and again expressing an interest in retaining Watrel to pursue the personal injury claims.[2] By letter dated November 2, 2001 Watrel indicated his willingness to continue representation provided that "we are allowed to take our fees and costs out of the recovery *prior to* the proceeds going into the estate" (emphasis in original). (Trustee's Ex. 6.) By letter dated November 8, 2001 the Trustee indicated that such an arrangement was not permitted. (Trustee's Ex. 5.) By letter dated December 19, 2001 Watrel stated "...I must respectfully decline further representation in this matter... We can either file a substitution of counsel with the court or a Motion to Withdraw as counsel and stay the case until you select another attorney. By declining further representation, I am not waiving my law firm's attorney's fees and costs incurred to date." (Watrel's Ex. 12.)

On January 9, 2002 the Trustee retained Gregory A. Lawrence ("Lawrence") to represent the Chapter 7 estate in pursuit of Debtor's pre-petition personal injury claims.[3] At the time Lawrence was retained, mediation in the state court litigation had already been scheduled. Lawrence represented the Trustee at mediation, during which the parties reached a $42,500.00 settlement. Lawrence also drafted and negotiated the terms of the releases. On August 29, 2002 the Trustee filed a motion for approval of the settlement. (Doc. 57.) On October 17, 2002 the Court entered Order Approving Compromise. (Doc. 64.)

On January 30, 2002 Watrel filed a secured proof of claim in the amount of $17,383.92, of which $14,612.50 represents attorney's fees and $2,771.42 represents costs incurred in the personal injury actions.

## CONCLUSIONS OF LAW

The Trustee objects to Claim 10 contending that Watrel forfeited all rights to compensation because his decision not to pursue the personal injury claims on behalf of the bankruptcy estate constituted a voluntary withdrawal from representation in a contingent fee case before the contingency occurred.[4]

If an attorney representing a client under a contingent fee agreement voluntarily withdraws from representation prior to the occurrence of the contingency, the attorney forfeits all rights to compensation. *Faro v. Romani*, 641 So.2d 69, 71 (Fla.1994). However, "if the *client's conduct* makes the attorney's continued performance of the contract either legally impossible or would cause the attorney to violate an ethical rule of the Rules Regulating the Florida Bar, that attorney may

---

**2.** The Trustee testified it is his practice to hire a debtor's pre-petition attorney to prosecute a claim on behalf of a debtor's bankruptcy estate because a debtor is more likely to cooperate with an attorney he or she previously retained. The Trustee also testified that he seeks to avoid paying two attorneys for the prosecution of one lawsuit.

**3.** The state court entered an order substituting counsel in the pending injury cases.

**4.** Although the Trustee's Objection appears to object to Claim 10 in its entirety, the Trustee concedes in his memorandum of law that Watrel is entitled to a claim for the costs he incurred on Debtor's behalf.

be entitled to a fee when the contingency of an award occurs" (emphasis added). *Id.*

If an attorney representing a party under a contingent fee contract is discharged without cause before the contingency has occurred, the attorney is entitled to the reasonable value of his services, on the basis of quantum meruit, provided that the contingency successfully occurs. *Rosenberg v. Levin,* 409 So.2d 1016, 1021 (Fla.1982). The quantum meruit recovery cannot exceed the maximum contingent fee due under the agreement. *Id.*

Watrel argues that Debtor's bankruptcy filing made his continued representation of Debtor legally impossible. Watrel points out that Debtor's personal injury claims became property of the bankruptcy estate and that upon the filing only the Trustee had authority to settle or compromise the claims. Watrel also points out that his continued prosecution of the claim required the Court's approval of his employment as special counsel for the Trustee. The Court finds that none of the foregoing made Watrel's representation of Debtor "legally impossible". A trustee's request to employ special counsel, one routinely granted by the Court, does not create a "legal impossibility". The only impediment to Watrel's continued representation was his refusal to continue representation absent a guarantee from the Trustee that he could obtain his fees and costs out of any recovery prior to the proceeds going to the estate. The Court finds that the legal impossibility exception set forth in *Rosenberg* does not encompass an impossibility which the attorney himself created.

Alternatively, Watrel argues that there is an inherent conflict of interest in representing the debtor and the bankruptcy estate. Watrel points to the distribution scheme set forth in 11 U.S.C. § 726(a)(6), which provides that a debtor is entitled to any funds remaining in the estate after payment to all creditors. Watrel asserts that a Trustee's primary interest in paying creditors and recovering his trustee compensation may clash with a debtor's interest in receiving residual funds after the payment of all creditors. Watrel concedes that such a conflict did not arise in this case. An attorney representing a Chapter 7 trustee after having represented a debtor pre-petition must make a careful determination at the outset as to whether a conflict of interest between the trustee and the debtor will subsequently arise. Based upon Watrel's November 2, 2001 letter to the Trustee indicating his willingness to continue representation, the Court finds that Watrel engaged in a careful and thoughtful analysis of the potential for a conflict of interest and concluded that no such conflict would arise. The Court finds that Watrel's refusal to continue representation was borne not out of an attempt to avoid an ethical dilemma but rather out of a desire to be paid prior to the proceeds of any recovery going to the estate.

Finally, Watrel argues that Debtor's bankruptcy filing was a constructive discharge without cause. The mere filing of a bankruptcy petition does not discharge or terminate a debtor's pre-petition attorney. As the Trustee points out, a contrary finding would create a hardship for bankruptcy estates, trustees, and ultimately unsecured creditors. If an attorney prosecuting a claim on a contingent basis is deemed to be discharged without cause upon the client's filing of a bankruptcy petition, the attorney would be entitled to a quantum meruit recovery up to the amount of the contingency. The trustee would be forced to retain and pay a second attorney. Such a double payment, which could theoretically equal 80% of the total

recovery, would reduce the payment to the unsecured creditors. Additionally, upon the facts before it, the Court cannot find that the Trustee discharged Watrel. Within several weeks of the Trustee's appointment upon re-conversion of the case, the Trustee attempted to obtain Watrel's continued representation. However, despite the Trustee's assurances to Watrel that he would likely be paid within four to six months rather than years, Watrel refused to continue in the case, stating "I must respectfully decline further representation in the matter." The Court finds that Watrel voluntarily withdrew from representation and therefore forfeited all rights to compensation.

### CONCLUSION

The Court finds that Watrel voluntarily withdrew from representation prior to a recovery by Debtor's bankruptcy estate. Debtor's bankruptcy filing did not make Watrel's continued performance of the contract legally impossible. Additionally, Watrel's representation of Debtor's bankruptcy estate would not have caused Watrel to violate any ethical rule of the Rules Regulating the Florida Bar. Accordingly, Watrel forfeited all rights to attorney's fees. Because Debtor's obligation to reimburse Watrel for costs is not contingent upon Watrel obtaining a recovery, Watrel is entitled to reimbursement of his costs in the amount of $2,771.42. The Court will enter a separate Order consistent with these Findings of Fact and Conclusions of Law.