676 So.2d 444 (1996)
Vernon DOREMUS, Appellant,
v.
FLORIDA ENERGY SYSTEMS OF SOUTH FLORIDA, INC., et al., Appellee.
No. 95-0897.
District Court of Appeal of Florida, Fourth District.
May 8, 1996.
Rehearing, Rehearing, Clarification and Certification Denied June 14, 1996.
*445 Evan R. Abrams, Boca Raton, for appellant.
Richard A. Barnett of Richard A. Barnett, P.A., Hollywood, pro se.
Thomas D. Lardin of Thomas D. Lardin, P.A., Fort Lauderdale, for appelleesThomas D. Lardin, P.A. and Barbara G. Banks, P.A.
Rehearing, Rehearing En Banc, Clarification and Certification Denied June 14, 1996.
KLEIN, Judge.
Vernon Doremus, who was a plaintiff in a personal injury case, discharged his first counsel after a low jury verdict, retained new counsel who obtained a reversal for a new trial, and then settled directly with the defendant, leaving it up to the court to determine the amount of attorney's fees for all counsel. The court awarded attorneys fees totalling $73,460, and Doremus appeals, arguing that the fees are excessive because the recovery was only $115,000.
Doremus initially retained Barbara Banks; however, when she was unable to negotiate a settlement she referred him to Thomas Lardin. Banks and Lardin, who together had a 40% contingent fee contract, ultimately recommended that Doremus accept a $125,000 offer of judgment; however, Doremus turned it down, and got a jury verdict of $39,850. Having lost confidence in Banks and Lardin at that point, Doremus discharged them and hired Richard Barnett under another 40% agreement.
Barnett took an appeal and we reversed for a new trial because of defense counsel's improper reference to Doremus' dishonorable discharge from the Army. Doremus v. Florida Energy Systems, 634 So.2d 1106 (Fla. 4th DCA 1994).
Barnett then noticed the case for trial and defendant offered $100,000. Barnett advised Doremus that he should settle for the $100,000, and that if he would, Barnett would accept $16,000 and Banks and Lardin together would accept $24,000, so that the total fees would be $40,000, or 40% of the recovery.
Doremus did not want to settle, and Barnett then wrote him a letter confirming that all counsel had agreed to limit their fee to 40%, even though they could have charged an additional 5% because of the appeal. In the last 3 paragraphs of the letter Barnett stated:
Of course you are not obligated to accept this offer, however, if you do not think this is a proper evaluation or an appropriate offer, I would simply invite you to seek other counsel. I will simply lien your file for fees as will Mr. Lardin and Ms. Banks and perhaps you can find some other attorney through whom you may be able to shoot for the stars.
* * * * * *
Please let me know whether you are going to follow my legal advise (sic) and take this settlement or obtain other counsel.
The same day he wrote the letter, Barnett filed a motion to withdraw, citing "irreconcilable differences" and noticed a hearing. Doremus was the only one who appeared at that hearing, which resulted in an order granting Barnett's motion to withdraw.
Doremus apparently tried to retain other counsel, but was unsuccessful, and he ultimately negotiated a settlement without counsel in the amount of $114,900. His prior counsel had filed liens for attorney's fees and costs and, after an evidentiary hearing, the court awarded Banks and Lardin quantum meruit fees of $45,960 along with costs of $6,529. The court awarded Barnett quantum meruit fees of $27,500.
Under Rosenberg v. Levin, 409 So.2d 1016 (Fla.1982), when an attorney on a contingent fee contract is discharged by the client before the contingency occurs, compensation is based on quantum meruit, not to exceed the maximum provided in the contract. Lardin testified that he had put in 200 hours and Banks testified that she had put in 50 hours. An expert testified that these hours were reasonable, and that a proper hourly rate for Lardin was $275, and for Banks, $250. The amount awarded to Banks and Lardin, $45,960, does not exceed 40% of the $115,000 recovery.
Doremus argues that Banks and Lardin are entitled to nothing or, since the verdict they obtained was only $39,850, the upper limit on their contingent fee should not *446 be based on the ultimate recovery of $115,000. We cannot agree, since the Rosenberg court referred to the recovery which would be a factor in limiting how much the discharged counsel could be paid under quantum meruit as the "final recovery." Id. at 1021.
In Rosenberg, the court also stated:
In computing the reasonable value of the discharged attorney's services, the trial court can consider the totality of the circumstances surrounding the professional relationship between the attorney and client. Factors such as time, the recovery sought, the skill demanded, the results obtained, and the attorney-client contract itself will necessarily be relevant considerations.
Id. at 1022. See also Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz, 652 So.2d 366 (Fla.1995).
Our standard of review is abuse of discretion. Searcy, at 369. We do not find that the trial court abused its discretion here, in awarding an amount just shy of 40% of the final recovery, but caution that trial courts must consider, pursuant to Rosenberg, the "totality of the circumstances" in setting fees for discharged counsel.
We do agree with Doremus that Barnett's fees must be reversed because Barnett withdrew under the same circumstances as counsel withdrew in Faro v. Romani, 641 So.2d 69 (Fla.1994).
In Faro counsel filed a motion to withdraw based on "irreconcilable differences" after counsel had strongly recommended Faro accept a $600,000 offer in an accident case, and Faro refused. Our supreme court concluded that counsel's withdrawal did not fit within any of the circumstances authorizing withdrawal in Rule Regulating the Florida Bar 4-1.16(b), and held that when "an attorney withdraws from representation upon his own volition, and the contingency has not occurred, the attorney forfeits all rights to compensation." Id. at 71. The supreme court approved Kay v. Home Depot, Inc., 623 So.2d 764, 766 (Fla. 5th DCA 1993), rev. denied, 632 So.2d 1026 (Fla.1994) in which Judge Peterson, speaking for the court, explained:
It does not appear that in the instant case, Kay was at fault in her dealings with Driscoll since the sole controversy between them was Driscoll's desire to settle the claim for $40,000 and Kay's desire to proceed to trial or at least obtain a larger settlement by rejecting the $40,000 offer. It is understandable that an attorney may wish to avoid the uncertainties, time and stress of trial if that attorney's opinion of the value of a case is lower than the settlement offer. While that opinion can be expressed strongly to the client, the final decision is the client's.[1]
The trial court awarded Barnett quantum meruit fees, finding that Barnett had not withdrawn. There is no evidence, however, which would support that finding. Barnett testified at the hearing on fees that he "thought" the hearing on his motion to withdraw had been cancelled, which is why he did not attend. There is no transcript of the hearing; however, the order did grant his motion to withdraw. And, at the hearing on fees, Barnett testified that prior to filing the motion to withdraw, he told Doremus in person that he did not want him as his client anymore, and that he could no longer effectively represent him.
Under Faro, Doremus was entitled to reject the offer and have Barnett try his case. Yet Barnett made it perfectly clear in his letter to Doremus, as well as his testimony at the fee hearing, that he was not going to try the case. That evidence, coupled with the order granting his motion to withdraw, can lead to no other conclusion but that Barnett voluntarily withdrew, and is not, under Faro, entitled to a quantum meruit fee for all of his work.
Barnett did obtain a successful result on the appeal, and the contingent fee contracts did provide that the fee would be increased *447 from 40% to 45% if there were an appeal. Since appeals have been classified as a distinct proceeding, increasing contingent fees by 5%, see Florida Bar Rule 4-1.5, we see no reason why Barnett should not be entitled to the 5% for his representation on the appeal. The 5% would be less than his quantum meruit charges for the appeal.
Although we initially sympathized with Doremus when we saw that the proceedings below had resulted in two-thirds of his recovery going for attorneys' fees, in fact it was Doremus' unreasonableness in being unwilling to pay a 40% fee, as he contracted to do, which put this case in the posture in which it reached us. These lawyers were willing to accept a total fee of 40%, waiving the 5% for the appeal, but Doremus was unwilling to pay even that.
We hope that when a plaintiff on a contingent fee discharges counsel and obtains new counsel, both counsel will attempt to work it out, as these lawyers tried to do, so that the bulk of the client's recovery is not eaten up in fees and costs. We would also expect that new counsel would make the client aware of the ramifications of entering into a second contingent fee contract, which we assume was done here. As our supreme court noted, in making a different point in Faro, the "nature of the attorney-client relationship requires an analysis that differs from the principles of compensation that are applicable in other contractual relationships." Faro, 641 So.2d at 70.
We affirm the attorney's fees and costs awarded Banks and Lardin, but reduce Barnett's fee to 5% of the recovery. Affirmed in part and reversed in part.
PARIENTE and GROSS, JJ., concur.
NOTES
[1] Paragraph 10 of the Statement of Client's Rights states:

10. You, the client, have the right to make the final decision regarding settlement of a case.... [Y]ou must make the final decision to accept or reject a settlement.
Rules Regulating the Florida Bar 4-1.5, Statement of Client's Rights.